# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DOCE LIMITED PARTNERSHIP,

    *Plaintiff,*

vs.

SANDRIDGE EXPLORATION AND
PRODUCTION, LLC,

    *Defendant.*

Case No. 16-1045-EFM-KGG

## MEMORANDUM AND ORDER

    Doce Limited Partnership owns land that is leased to SandRidge Exploration and Production, LLC, for oil and gas exploration and development. When Doce learned that SandRidge was also using this land to dispose millions of barrels of water produced from its other oil and gas operations, this lawsuit commenced. Doce alleges that the disposal of off-lease water was unauthorized and constitutes breach of contract and trespass. Doce also claims that SandRidge was unjustly enriched by disposing of the off-lease water without the right do so. Doce moves for partial summary judgment (Doc. 22), seeking a judgment that SandRidge was not authorized to dispose of off-lease water on its land. SandRidge also seeks summary judgment (Doc. 24). SandRidge contends that it was in fact authorized to dispose of off-lease water on Doce's land, and therefore, cannot be held liable for breach of contract, trespass, or unjust enrichment. Because the parties' unambiguous agreement allowed for the diposal of off-

lease water, the Court grants SandRidge's motion for summary judgment and dismisses Doce's claims.

## I. Factual and Procedural Background[1]

Plaintiff Doce Limited Partnership owns the surface and mineral rights in and under land in Harper County, Kansas. Doce leased two parcels of that land to Defendant SandRidge Exploration and Production, LLC, pursuant to two earlier leases that SandRidge had acquired. Those earlier leases were executed by SandRidge's predecessors in 1977 and 2010, respectively. In June 2013, Doce and SandRidge entered into a Voluntary Pooling and Unitization Agreement (the "VPU Agreement"). The VPU agreement consolidated the two parcels of land that were covered by the 1977 and 2010 leases into a single production unit (the "Doce Unit"). Under the VPU agreement, SandRidge could drill a horizontal well that crossed the boundary line between the two parcels of land.

After the parties executed the VPU agreement, SandRidge approached Doce about entering a potential right of way and easement agreement. SandRidge and Doce exchanged several proposed easements. And on August 15, 2013, Doce, as grantor, executed a Surface Right of Way and Easement (the " Surface Easement"). In exchange for the Surface Easement, SandRidge paid Doce $20,000. Relevant here, the Surface Easement provided:

> 1) [Doce] grants, transfers, conveys and warrants unto [SandRidge] a right of way and easement covering the entirety of that certain tract of the Land containing three and one-tenth (3.10) acres, (hereinafter referred to as the "Surface Easement") [] over and through the Land for the purposes of, locating, drilling, completing, constructing, using, installing, operating, inspecting, protecting, altering, maintaining, re-entering, improving, repairing, changing the

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

> size of, removing, plugging, and replacing an oil, gas, and/or saltwater disposal well or wells, facilities and all appurtenances necessary to operate the same . . . .
>
> 2) [Doce] also grants, transfers, conveys, and warrants unto [SandRidge] the right to drill, complete, construct, use, or operate, convert, maintain, re-enter and repair a saltwater disposal well or wells for [SandRidge's] use in and for the disposal of saltwater, brine and mineral water and other liquids produced from oil and gas operations operated by or on behalf of [SandRidge], to be located anywhere on the lands comprising the Surface Easement, with all appurtenances necessary to operate the same.

At the end of November 2013, SandRidge completed the Astoria 3306 1-34 SWD well (the "Astoria well"), a saltwater disposal well located on the Doce Unit. The next month, SandRidge began disposing water into the Astoria well. In April 2014, SandRidge completed two horizontal producing wells on the Doce Unit: they were named the Lee 3306 1-34H and 2-34H wells, respectively.

SandRidge connected the Astoria well to a water disposal system that includes multiple oil, gas, and disposal wells. The water disposal system receives water from all of the connected oil and gas wells, and transports that water to any one or more of the water disposal wells included in the system. The water disposal system that included the Astoria well also included 51 other wells, most of which were not located on the Doce Unit. Between two and seven of those wells were water disposal wells, the rest, presumably, were oil and gas wells. In other words, between 44 and 49 of the wells in the system produced water, which was disposed into only handful of water disposal wells, one of which was the Astoria well.

It is undisputed that SandRidge disposed of water from both the Doce Unit and elsewhere (off-lease) into the Astoria well. In 2014, the Lee 3306 1-34H and 2-34H wells on the Doce Unit produced 954,994 barrels of water. Over that same period, SandRidge disposed of 2,032,101 barrels of water into the Astoria well.

Upon discovery that SandRidge was disposing of water produced off-lease into the Astoria well, Doce brought this action in Harper Country District Court. Doce argues that SandRidge was not authorized to dispose of off-lease water on the Doce Unit. Accordingly, Doce claims that Astoria breached the VPU Agreement and the Surface Easement and committed a past and ongoing trespass by disposing of off-lease water into the Astoria well. Doce also alleges that SandRidge was unjustly enriched because it did not compensate Doce for its use of the Astoria well to dispose of off-lease water.

Both parties now seek summary judgment. Doce seeks partial summary judgment, asking the Court to determine that under the parties' agreements, SandRidge was not authorized to dispose of off-lease water on Doce's land. Alternatively, Doce seeks judgment declaring that the Surface Easement is ambiguous, and therefore requires the consideration of extrinsic evidence to construe the parties' rights. Conversely, SandRidge argues that the Surface Easement authorized it to dispose of off-lease water on the Doce Unit. And so SandRidge argues that because the parties agreed that it could dispose of off-lease water into the Astoria well, the Court should dismiss Doce's claims for breach of contract, trespass, and unjust enrichment.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[4] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[8] Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[9] Each motion will be considered separately.[10] To the extent the cross-motions overlap, however, the court may address the legal arguments together.[11]

---

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[9] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1382 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983)).

[10] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[11] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

### III. Analysis

The parties agree that under Kansas law, the 1977 and 2010 leases give SandRidge the right to dispose of water that was produced on the Doce Unit into the Astoria well.[12] This right is created both by implication and statute.[13] But those leases did not give SandRidge the right to dispose of off-lease water into the Astoria well.[14] Rather, SandRidge would need separate permission to dispose of off-lease water into the Astoria well.[15] An exception to this principle exists when the off-lease water is used to increase oil production, but those facts are not present in this case.[16] And so this case turns on the question of whether Doce authorized SandRidge to dispose of off-lease water into the Astoria well.

Each party relies on its interpretation of the Surface Easement in arguing that SandRidge was or was not authorized to dispose of off-lease water into the Astoria well. For that reason, the outcome of the parties' motions turns on the Court's construction of the Surface Easement. The

---

[12] *Dick Props., LLC v. Bowman Tr.*, 43 Kan. App. 2d 139, 221 P.3d 618, 621 (2010) ("[A]n oil and gas lease, by implication, conveys upon the lessee the right to drill and operate a saltwater disposal well on the leased premises and dispose of on-lease water.").

[13] *Colburn v. Parker & Parsley Dev. Co.*, 17 Kan. App. 2d 638, 842 P.2d 321, 325 (1992); *see also* K.S.A. § 55-901.

[14] *Dick Props.*, 221 P.3d at 621 ("[T]he court-created implied covenant is limited to saltwater produced on the lease and does not extend to saltwater produced on other leases."); *see also* 4 Nancy Saint-Paul, *Summers Oil & Gas* § 40:7, 11-12 (3d ed. 2009) ("[A] lessee may not use a well on the premises to dispose of saltwater from operations on other lands.").

[15] *Id.* ("When [the operator] wanted to dispose of saltwater produced on *other* oil and gas leases into this same disposal well, a saltwater disposal lease was in order."); *cf. Colburn*, 842 P.3d at 327 ("Salt water *from the premises of an oil and gas lease* may be disposed of or injected in accordance with the rules of the Kansas Corporation Commission.") (emphasis added).

[16] *Crawford v. Hrabe*, 273 Kan. 656, 44 P.3d 442, 453 (2002).

construction and interpretation of a contract is a question of law that properly may be determined on a motion for summary judgment, provided the contract is unambiguous.[17]

In interpreting a written instrument, the Court will assign the terms their plain, general, and common meaning.[18] The language used anywhere in the instrument will be construed in harmony with the rest of the provisions.[19] And the Court will avoid an interpretation that would reduce the contract's terms to an absurdity.[20]

> At issue is paragraph two of the Surface Easement, which provides:
>
> [Doce] also grants, transfers, conveys, and warrants unto [SandRidge] the right to drill, complete, construct, use, or operate, convert, maintain, re-enter and repair a saltwater disposal well or wells for [SandRidge's] use in and for the disposal of saltwater, brine and mineral water and other liquids produced from oil and gas operations operated by or on behalf of [SandRidge], to be located anywhere on the lands comprising the Surface Easement, with all appurtenances necessary to operate the same.

Doce argues that the above paragraph did not authorize SandRidge to dispose of off-lease saltwater because "nowhere in this paragraph is disposal of off-lease or 'foreign' produced saltwater ever mentioned." Rather, Doce asserts that in the context of the entire Surface Easement, the reference to "the disposal of saltwater . . . from oil and gas operations operated by or on behalf of" SandRidge refers only to SandRidge's operations on the Doce Unit.

On the other hand, SandRidge emphasizes the words "produced from oil and gas operations operated by or on behalf of [SandRidge]" that describe the "saltwater, brine and mineral water and other liquids" that SandRidge is authorized to dispose. SandRidge notes that

---

[17] *Duffin v. Patrick*, 212 Kan. 772, 512 P.2d 442, 447-48 (1973); *see also* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2730.1, 61-63 (3d ed. 2004).

[18] *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 738 P.2d 866, 871 (1987)

[19] *Id.*

[20] *Simpson v. City of Topeka*, 53 Kan. App. 2d 61, 383 P.3d 165, 170 (2016).

this language contains no limitations, and argues that a plain reading grants SandRidge the right to dispose on the Doce Unit any saltwater that it has produced, whether that saltwater was produced from the Doce Unit or off-lease. SandRidge contends that "[i]f Doce or SandRidge had intended to limit disposal to only water produced by oil or gas wells located on the Doce Leased Premises, either party certainly could have added that language to the Surface Easement, but they did not." The Court agrees.

Doce argues that paragraph two fails to explicitly authorize the disposal of off-lease or foreign produced water. But it ignores the fact that paragraph two also fails to explicitly or specifically limit the disposal to on-lease water. Instead of considering which magic words—such as "on-lease," "off-lease," or "foreign"—were omitted, the Court looks only at the plain language that was agreed to by the parties. Under paragraph two, SandRidge is authorized to dispose of saltwater produced from its oil and gas operations. The provision does not distinguish between SandRidge's on-lease or off-lease productions. The provision does not limit or identify which of SandRidge's operations give rise to the disposal of saltwater. Rather, the provision simply authorizes disposal on the Doce Unit of saltwater produced by SandRidge. Accordingly, SandRidge was authorized to dispose of off-lease saltwater into the Astoria well, provided that that saltwater was "produced from oil and gas operations operated by or on behalf of" SandRidge. The Court will not add words limiting such disposal only to saltwater produced from operations on the Doce Unit.[21]

---

[21] *Quenzer v. Quenzer*, 225 Kan. 83, 587 P.2d 880, 882 (1978) ("Words cannot be written into a contract which import an intent wholly unexpressed when it was executed.").

Although not binding on this Court, the case of *Crooks v. Placid Oil Co.*[22] dealt with similar facts and reached the same outcome. In *Crooks*, the Louisiana Court of Appeals considered the effect of a "Salt Water Disposal Agreement, Servitude and Damage Release."[23] That agreement provided that the defendant could "convey salt water and other materials *from wells in the area* to the salt water injection well" located on the plaintiff's property.[24] The court found that the agreement authorized the defendant to dispose of more than on-site water on the plaintiff's property.[25] Specifically, the court stated that the agreement was "clear, explicit, and unambiguous in its lack of restriction on the source of the salt water."[26] Similarly here, the Surface Easement's lack of restriction is clear. In fact, in this case the language is even less restrictive. In *Crooks*, the defendant could dispose of salt water from wells "in the area."[27] But here, the Surface Easement dictates that SandRidge could dispose of saltwater produced from its operations without any reference to where those operations were located. Under paragraph two, SandRidge was authorized to dispose of off-lease water on the Doce Unit.

In addition to reflecting the plain language of the Surface Easement, the above holding is the only interpretation of the instrument that would not render paragraph two redundant or useless.[28] It is well established that in Kansas, an oil and gas lease conveys upon an operator the

---

[22] 981 So. 2d 125 (La. App. 3 Cir. 2008).

[23] *Id.* at 127.

[24] *Id.* at 130 (emphasis in original).

[25] *Id.* at 131.

[26] *Id.*

[27] *Id.* at 130.

[28] *Forrest Energy, LLC v. Seib*, 2007 WL 2580517, at *5, 166 P.3d 449 (Kan. App. 2007) (unpublished table opinion) ("It is well established that meaning will be given to every part of a contract, if possible, rather than a construction adopted that will render some portions doubtful or useless.").

right to drill and operate a saltwater disposal well to dispose of on-lease water.[29] Therefore, before the Surface Easement was ever executed, SandRidge had the authority to dispose of on-lease water into the Astoria well.[30] The parties seem to recognize this fact, considering paragraph one of the Surface Easement. In paragraph one, Doce grants SandRidge a right of way and easement "for the purposes of, locating, drilling, completing, constructing, using, installing, operating . . . an oil, gas, *and/or saltwater disposal well or wells*. In paragraph one, Doce granted SandRidge a broad right of way and easement to conduct its oil and gas operation on a 3.10 acre tract of land on the Doce Unit. Notably, paragraph one contemplates the construction and use of a saltwater disposal well as part of SandRidge's oil and gas operation, as implied by Kansas law.[31]

If the Court accepted Doce's interpretation of the Surface Easement, paragraph two would not add anything to the agreement. Doce contends that paragraph two only authorizes the disposal of on-site saltwater. But SandRidge already had that authority under Kansas law, and paragraph one already contemplates the construction and use of a saltwater disposal well as part of SandRidge's oil and gas operation on the Doce Unit. And so Doce's interpretation of the Surface Easement is that paragraph two authorizes SandRidge to do something that it already had the authority to do, which the parties recognize in paragraph one. Such an interpretation is unreasonable, and ignores the use of the word "also" in paragraph two. Paragraph two states that Doce "*also* grants, transfers, conveys, and warrants unto" SandRidge the right to operate a

---

[29] *Dick Props.*, 221 P.3d at 142.

[30] *Fisherman Surgical Instruments, LLC v. Tri-anim Health Servs.*, 502 F. Supp. 2d 1170, 1179 (D. Kan. 2007) ("[C]ontracting parties are presumed to have in mind all existing and applicable statutes and case law relating to the contract.").

[31] *Colburn*, 842 P.2d at 325; *see also* K.S.A. § 55-901.

saltwater disposal well or wells for the disposal of liquids. And so the saltwater disposal well (or wells) identified in paragraph two is in addition to the one contemplated in paragraph one. Paragraph two can only be reasonably interpreted as granting SandRidge an easement to construct and operate a saltwater disposal well to dispose of saltwater produced from any of its operations.

Doce alternatively argues that the Surface Easement is ambiguous, and therefore, requests that the Court deny summary judgment. The question of whether terms of a contract are ambiguous is one of law for the Court.[32] A contract is not ambiguous unless two or more meanings can be reasonably construed from its provisions.[33] But that is not to say that contract is ambiguous merely because the parties disagree as to its meaning.[34] Ultimately, the Court will not strain to create ambiguity where, in common sense, there is none.[35] Rather, in determining whether there is ambiguity, "the language of the contract is to receive a fair, reasonable, and practical construction."[36] The only reasonable and practical interpretation of the Surface Easement is one that grants SandRidge the authority to dispose into the Astoria well saltwater from its operations, both on-lease and off-lease. Because the Surface Easement is susceptible to only one reasonable interpretation, it is not ambiguous.[37]

---

[32] *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 265 (2013).

[33] *Iron Mound, LLC v. Nueterra Healthcare Mgmt., LLC*, 298 Kan. 412, 313 P.3d 808, 812 (2013).

[34] *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 898 P.2d 1145, 1154 (1995).

[35] *O'Bryan v. Columbia Ins. Grp.*, 274 Kan. 572, 56 P.3d 789, 793 (2002) (citing *First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515, 519 (1998)).

[36] *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213, 1219 (1998).

[37] Because the Surface Easement is unambiguous, the Court also need not address the parties arguments regarding their subsequent conduct. The Court will only look to such evidence if it finds ambiguity. *See Iron Mound*, 298 P.3d at 812.

For the reasons stated above, SandRidge cannot be held liable for breach of contract or trespass. The Surface Easement unambiguously gave SandRidge the authority to dispose, on the Doce Unit, saltwater from its operations, without reference to where that water was produced. Accordingly, SandRidge did not breach the Surface Easement by disposing off-lease saltwater from its operations into the Astoria well. Nor does that disposal constitute a past and ongoing trespass. Under the Surface Easement, SandRidge had permission to dispose of off-lease water in the Astoria well. And consent is an absolute defense to an action for trespass.[38]

Lastly, Doce cannot recover under a theory of unjust enrichment. "[T]he right to recover under unjust enrichment is governed by principles of equity."[39] An unjust enrichment claim consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.[40] Doce's theory of recovery is that "[i]t would be inequitable to allow [SandRidge] to dispose of off-lease or 'foreign' produced water into the Astoria SWD well without authority and/or payment of compensation to [Doce] for such disposal." As noted above, SandRidge was acting within its authority, and it paid Doce $20,000 in exchange for the execution of the Surface Easement. Therefore, Doce's unjust enrichment claim must also fail. SandRidge was not unjustly enriched by its use of the Astoria well to dispose of off-lease saltwater; rather, it compensated Doce for the right to do so.

---

[38] *Amoco Prod. Co. v. Hugoton Energy Corp.*, 11 F. Supp. 2d 1270, 1279 (D. Kan. 1998) (citing *Belluomo v. KAKE TV & Radio*, 3 Kan. App 2d. 461, 596 P.2d 832, 840 (1979)).

[39] *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.2d 839, 847 (1996).

[40] *T.R. Inc. of Ashland v. Brandon*, 32 Kan. App. 2d 649, 87 P.3d 331, 336 (2004).

## IV. Conclusion

The Surface Easement is unambiguous and it granted SandRidge the right to dispose of saltwater that was produced from its oil and gas operations. The Surface Easement did not limit SandRidge's disposal right only to water produced on-lease. For that reason, SandRidge was authorized to dispose off-lease water into the Astoria well. Accordingly, SandRidge is not liable for breach of contract, trespass, or unjust enrichment. Doce's Motion for Partial Summary Judgment is denied. SandRidge's Motion for Summary Judgment is granted, and Doce's claims are dismissed.

**IT IS THEREFORE ORDERED** that Doce's Motion for Partial Summary Judgment (Doc. 22) is **DENIED.**

**IT IS FURTHER ORDERED** that SandRidge's Motion for Summary Judgment (Doc. 24) is **GRANTED.**

**IT IS SO ORDERED**.

Dated this 8th day of May, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE